

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

June 16, 2026

**BY EMAIL**

The Honorable Kenneth M. Karas
United States District Court Judge
Southern District of New York
Hon. Charles L. Brieant, Jr. United States Courthouse
300 Quarropas Street
White Plains, New York 10601

> Re: *United States v. Vernon Copeland*, **21 Cr. 521 (KMK)**
> **Response to Defendant's Emergency Motion (Dkt. No. 197)**

Dear Judge Karas:

Pursuant to the Court's Order (Dkt. No. 200), the Government respectfully submits this letter responding to defendant Vernon Copeland's Emergency Letter Motion for Immediate Medical Relief, Restoration of Medically Prescribed Assistive Device, and Protection Against Retaliation (Dkt. No. 197) (the "Motion"). For the reasons set forth below, the defendant's motion should be denied in its entirety.

### I.     Background

After a five-day trial, Copeland was convicted on July 14, 2023 of the following charges arising from his repeated rape and sexual abuse of his daughter when she was between the ages nine and thirteen years old: coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b) (Count One); aggravated sexual abuse of someone who was not yet 12 years of age, in violation of 18 U.S.C. § 2241(c) (Count Two); and transportation of a minor with the intent that the minor engage in sexual activity, in violation of 18 U.S.C. § 2423(a) (Count Three). On June 25, 2024, the Court sentenced him to life imprisonment, and judgment was entered on August 20, 2024. On April 27, 2026, the Second Circuit issued its mandate affirming the judgment. (Dkt. 162).

### II.     Copeland's Motion

Copeland filed his Motion on or about June 1, 2026. In it, he alleges that he suffers from "serious medical conditions affecting [his] ability to walk," for which he was provided a cane by the staff at the Metropolitan Detention Center-Brooklyn ("MDC"). Mot. 1-2. Copeland alleges that MDC staff recently took his cane away "despite the fact that [he has] not received any medical reassessment indicating that the device is no longer medically necessary." *Id.* at 2. He further alleges that since the cane has been removed, he has "experienced substantial difficulty standing and walking" and at times, has "been unable to leave [his] bed." *Id.* at 2. He alleges that in turn, he is unable to "obtain prescribed medication," and that MDC staff have "refused to bring

medication to [him] despite being aware of [his] inability to walk to medication distribution." *Id.* Copeland surmises that this "denial of medical access may be retaliatory in nature and connected to [his] ongoing litigation, grievances, and complaints regarding conditions of confinement." *Id.* at 3. Copeland requests that the Court grant his request for injunctive relief, namely, among other things, the return of his cane, the delivery of his medications, and a prohibition against any retaliatory actions by MDC staff. *Id.* at 3-4. He has not alleged that he has exhausted all available administrative remedies.

### III.    Legal Standard

"It is routine for courts to construe prisoner petitions without regard to labeling in determining what, if any, relief the particular petitioner is entitled to." *Chambers v. United States*, 106 F.3d 472, 475 (2d Cir. 1997). Although district courts are obligated to construe *pro se* petitions liberally and interpret them "to raise the strongest argument they suggest," a pro se litigant is not exempt "from compliance with the relevant rules of procedural and substantive law," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75, 477 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted) (emphasis omitted); *see Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (noting that the obligation to construe *pro se* pleadings liberally extends to the review of *habeas* petitions).

Where a federal prisoner seeks to challenge the execution of his sentence, including his conditions of confinement, the proper vehicle is a petition for writ of *habeas corpus* under 28 U.S.C. § 2241. *See e.g.*, *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("A challenge to the *execution* of a sentence . . . is properly filed pursuant to § 2241," and "includes matters such as the . . . prison conditions." (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir.2001)); *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) (stating that a § 2241 petition may be used to seek relief from, among other things, "prison conditions in the facility where he is incarcerated"); *Acevedo v. Capra*, 545 F. Supp. 3d 107, 117 (S.D.N.Y. 2021) ("[L]ongstanding Second Circuit precedent indicated that [the defendant] could challenge [his] conditions [of confinement] pursuant to § 2241, which our Court of Appeals has interpreted as covering such claims."); *Zaragosa-Solis v. Fed. Bureau of Prisons*, No. 24-CV-2901 (ALC), 2024 WL 3318220, at *2 (S.D.N.Y. June 17, 2024) ("The Second Circuit has previously held a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241 is available, and may be the preferred avenue, for federal prisoners seeking to challenge the execution of their sentences, including their conditions of confinement."). Requests for medical care fall under post-conviction challenges to conditions of confinement. [1] *See United*

---

[1] Before a district court can recharacterize a motion as a § 2241 *habeas corpus* petition and decide the petition on the merits, it normally must provide a petitioner with both notice of the consequences of filing a petition under § 2241 and an opportunity to withdraw the motion. *See Simon v. United States*, 359 F.3d 139, 145 (2d Cir. 2004) (finding that district court's *sua sponte* recharacterization of petitioner's motion as a § 2241 *habeas corpus* petition was improper in light of "various potential obstacles to relief on successive § 2241 petitions"). This is because, like *habeas* petitions filed under 28 U.S.C. §§ 2254 and 2255, Congress has severely limited a prisoner's ability to file multiple *habeas* petitions under § 2241. *See Simon*, 359 F.3d at 143 n.7 (noting that federal courts have been given the statutory authority under 28 U.S.C. § 2244(a) to "dismiss § 2241 habeas petitions when they raise claims that have already been decided on the

*States v. Needham*, 460 F. Supp. 3d 323, 325 (S.D.N.Y. 2020) ("[The defendant's] request for medical treatment is akin to a *habeas* petition under 28 U.S.C. § 2241"); *United States v. George*, 2016 WL 843282, at *5 (E.D.N.Y. Mar. 1, 2016) (finding defendant's motion for review of BOP medical treatment was a challenge to his prison conditions and thus should be construed as habeas petition under § 2241).

"[T]o entertain a habeas petition under § 2241, a court must have jurisdiction over the petitioner's custodian." *Needham*, 2020 WL 2512105, at *2; *see Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("[T]he proper respondent to a habeas petition is the person who has custody over the petitioner." (internal quotation marks, citation, and alteration omitted)); *United States v. Vittini-Morey*, No. 99 CR 893 (SAS), 2007 WL 510095, at *2 (S.D.N.Y. Feb. 15, 2007) ("[T][he proper respondent in a petition brought under section 2241 is the warden who has physical custody of the defendant."). "Thus, a section 2241 petition must be brought in the district in which the petitioner is incarcerated, not the district in which petitioner was sentenced. Accordingly, the only proper venue for review of a section 2241 petition is in the district of confinement." *Vittini-Morey*, 2007 WL 510095, at *2; *see United States v. Zehner*, No. 19 CR. 485 (AT), 2020 WL 3057759, at *2 (S.D.N.Y. June 8, 2020) ("Venue for a habeas petition under § 2241, therefore, generally lies in the district of confinement."); *Padilla*, 542 U.S. 443 ("[F]or core habeas petitions challenging the present physical confinement, jurisdiction lies in only one district: the district of confinement."); *United States v. Davis*, No. 12-CR-712 (SHS), 2025 WL 404475, at *1 (S.D.N.Y. Feb. 5, 2025) ("District courts may only grant habeas petitions 'within their respective jurisdictions,' 28 U.S.C. § 2241(a), and a district court has jurisdiction over the habeas petition only if it has jurisdiction over the petitioner's custodian.").

A federal prisoner bringing a § 2241 petition challenging the execution of his sentence must exhaust all available administrative remedies before filing his pleading. *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). Failure to exhaust is a procedural default that will be excused only upon a showing of cause and prejudice. *See id.* at 630, 633-34. A court may also excuse a litigant's failure to exhaust when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) [an] administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Batista v. Orange Cnty. Dep't of Mental Health*,

---

merits in a prior § 2241 petition."). To the extent the Court decides the Motion on the merits, it should follow *Simon*'s mandate and provide Copeland with notice and an opportunity to withdraw his motion. However, to the extent the Court dismisses the Motion on jurisdictional grounds—as the Government believes the Court should—it can do so without providing Copeland notice or an opportunity to withdraw his motion because dismissal on jurisdictional grounds does not trigger the restrictions associated with "second or successive" *habeas* petitions. *See Geddes v. Lindsay*, No. 07-CV-5054 (NGG), 2008 WL 2620129, at *2 n.1 (E.D.N.Y. July 1, 2008) ("Because this court dismisses Petitioner's motion on jurisdictional grounds, however, any subsequent section 2241 motion made by Petitioner would not be subject to section 2244."); *Duamutef v. I.N.S.*, 386 F.3d 172, 176 n.3 (2d Cir. 2004) (holding that although if the district court had failed to give the petitioner notice and an opportunity to withdraw his motion prior to recharacterization, the prisoner's § 2241 petition was decided on jurisdictional grounds, and therefore, the petitioner was not prejudiced)

No. 1:20-CV-5733 (LLS), 2020 WL 5751512, at *3 (S.D.N.Y. Sept. 24, 2020) (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

## IV.   Discussion

Although styled as an "Emergency Motion" to receive medical treatment, Copeland's Motion is substantively a post-conviction challenge to the conditions of his confinement at a federal correctional facility. The Court should therefore treat his Motion for medical care as a petition for writ of *habeas corpus* under § 2241. *See Needham*, 460 F. Supp. 3d 325 ("[The defendant's] request for medical treatment is akin to a *habeas* petition under 28 U.S.C. § 2241"); *George*, 2016 WL 843282, at *5 (finding defendants motion for review of BOP medical treatment was a challenge to his prison conditions and thus should be construed as a § 2241 *habeas* petition).

As a § 2241 petition, Copeland's Motion suffers multiple jurisdictional and procedural defects that warrant dismissing the Motion. *First*, Copeland has failed to bring his Motion against the proper respondent, the warden of MDC. *Padilla*, 542 U.S. at 434  ("The proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" (quoting 28 U.S.C. § 2242). *Second*, even if Copeland were to amend his Motion to include the proper respondent, the Court has no jurisdiction over the warden of MDC because MDC is located in the Eastern District of New York. "Because [the defendant] is in the custody of the warden of MDC, located in Kings County, venue lies in the Eastern District of New York." *Needham*, 460 F. Supp. 3d at 325–26; *United States v. Zehner*, No. 19 CR. 485 (AT), 2020 WL 3057759, at *2 (S.D.N.Y. June 8, 2020) (same); *Morrow v. Terrell*, 715 F. Supp. 2d 479, 480 n.2 (S.D.N.Y. 2010) (same); *see* 28 U.S.C. § 112(c) (listing Kings County as falling within the Eastern District of New York). *Third*, even if Copeland's Motion was amended with the right respondent and filed in the right district, he has failed to allege any facts showing that he has exhausted his administrative remedies or that he should be excused from his failure to exhaust.[2]

Should this Court seek to address Copeland's claims in substance—and to be clear, the Government does not believe the Court has jurisdiction to do so—it should deny his Motion because it is utterly meritless. Based on medical records that the Government has obtained from MDC, attached hereto as Exhibit A, the Government has learned that in August 2025, Dr. Jeffrey Davis at the Brooklyn Hospital Center recommended that Copeland be given a cane, and it appears that Copeland has had a cane since at least in or about October 2025. *See* Ex. A at 1, 150, 164. An appointment to determine whether he still needed a cane was scheduled for May 26, 2026, but Copeland refused to attend the appointment. *Id.* at 1 and 5.

On May 28, 2026, a nurse practitioner observed Copeland walking "with an essentially normal physiological gait." *Id.* at 1. In fact, "[t]he cane was intermittently dragged behind him rather than used for weight bearing or stability." *Id.* When confronted, Copeland resisted returning

---

[2] Copeland's Emergency Complaint Regarding Denial of Medical Care, Confiscation of Prescribed Assistive Devices, and Failure to Implement Neurologist's Orders (Dkt. No. 206) should likewise be recharacterized as a § 2241 *habeas* petition and dismissed on the same grounds described above—failure to name the proper respondent, lack of jurisdiction over Copeland's custodian, and failure to exhaust his administrative remedies.

the cane and could not offer any explanation for why he should be allowed to keep the cane other than he "expect[ed] to fall." *Id.* The nurse practitioner noted that once the cane was taken away from Copeland, he began feigning a limp that was not consistent with any pattern and for which there was no "clear biomechanical correlation to a specific injury or deficit." *Id.* Additionally, the limp was not consistent with trying to limit or minimize pain or "with a gait requiring an assistive device for stability." *Id.*

Since he received the cane in or about October 2025, *id.* at 41, he has been occasionally observed without it—a month later, on or about December 2025, medical records indicate he was walking with a "steady gait" (*i.e.*, without a limp or other abnormality) and there is no mention of a cane, *id.* at 31. And despite reporting that the need for the cane stemmed from his "documented mobility limitations" and "spinal injuries" spanning several years (Dkt. No. 206, at 1), the medical record is clear that Copeland was observed as recently as in or about September 2025 "in the recreational area actively participating in a game of handball." Ex. A at 44.

Copeland's feigned limited mobility is consistent with his well-documented history of malingering, which has been observed by the United States Marshals Service, MDC staff, the Court, and medical evaluators. *See, e.g.*, Trial Tr. 202 (noting that Copeland "pretended to fall in the shower and be hurt" prior to coming to court for trial); 314 (recounting how on one morning before trial, Copeland pretended to be paralyzed after taking some medication, only to get up and walk out once a medical professional told Copeland that he would have to go back to jail if he continued to act paralyzed); *id.* at 391 (describing how Copeland, when he returned to MDC that evening, rose from his wheelchair and walked into his room to consume food without any apparent physical impediment); *see also* Dkt. No. 116, Gov't Sent'g Sub. at 15-20 (describing Copeland's malingering over the course of the case).

Recent x-rays of Copeland's spine on or about March 6, 2026 show few medical issues other than normal wear and tear associated with aging. *See, e.g.*, Ex. A at 138 (March 6, 2026 x-ray analysis indicating "[n]o fracture or misalignment of the thoracic spine"; also noting "minimal to mild degenerative space narrowing few levels of the mid to lower thoracic spine," which is normal wear and tear associated with aging). If anything, at least one spinal issue—a "right paracentral/foraminal disc protrusion" seen in an April 2023 MRI scan that was no longer visible in an MRI scan done in August 2025—appears to have actually improved. Ex. A at 148.

Finally, contrary to claims that he has been unable to get out of bed or walk to medicine distribution, his medication administration records show that he has received his medication after his cane was taken. Ex. A at 68. Moreover, when he did have his cane between in or about October 2025 through in or about May 28, 2026, Copeland has still repeatedly missed his medication distribution. Ex A at 63-68.[3]

---

[3] It appears that Copeland is bringing a deliberate indifference claim under the Eighth Amendment. *See* Motion at 3-4. Given the facts of his demonstrated malingering, it is unlikely that Copeland has alleged a sufficiently serious medical need or that prison officials knew about and ignored an excessive risk to his health or safety. *See Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021) (holding that defendant failed to allege deliberate indifference when he merely "disagree[d] with the [medical professional's] assessment of the severity of his condition and recommendation of

## V.    Conclusion

For the reasons stated above, the Court should deny the defendant's motion in its entirety for lack of jurisdiction or, in the alternative, transfer the matter to the Eastern District of New York.[4]

Respectfully,

JAY CLAYTON
United States Attorney

by: ___/s/_____

Timothy Ly
Assistant United States Attorney
(212) 637-1062

Cc:    Vernon Copeland, *pro se* (by ECF and Certified Mail)

Mr. Copeland has filed at least two motions for emergency medical relief. (See Dkt. Nos. 197 and 206). These motions effectively challenge Mr. Copeland's conditions of confinement and therefore should be addressed via a habeas petition under 28 U.S.C. Section 2241. See United States v. Needham, 460 F. Supp. 3d 323, 325 (S.D.N.Y. 2020) ("[The defendant's] request for medical treatment is akin to a habeas petition under 28 U.S.C. § 2241"). However, because Mr. Copeland is housed at the MDC in Brooklyn, he must seek relief in the Eastern District of New York, as this Court has no jurisdiction to entertain such petitions. Id. at 325-26 ("Because [the defendant] is in the custody of the warden of MDC, located in Kings County, venue lies in the Eastern District of New York."). Therefore, the motions are denied without prejudice to them being re-filed in the Eastern District of New York. The Clerk is respectfully directed to mail this document to Mr. Copeland.

So Ordered                        6/17/26

_____

treatment"); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)); *Williams v. M.C.C. Inst.*, 97 CIV. 5352, 1999 WL 179604, at *7 (S.D.N.Y. Mar. 31, 1999) ("[T]he law is clear that a difference of opinion . . . even among medical professionals themselves, as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference." (citations omitted)).

[4] "While courts have broad discretion to transfer actions to other judicial districts in the interest of justice, they may also dismiss claims brought in the wrong district." *Needham*, 460 F. Supp. 3d at 326 (citing 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") and *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993)).